UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VANGIE NAVARRO,                                    **DECISION AND ORDER**

                Petitioner,

      v.                                               6:20-CV-06094 EAW

SUPT. TIMOTHY McCARTHY,

              Respondent.

---

## I.    <u>INTRODUCTION</u>

*Pro se* petitioner Vangie Navarro ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). Petitioner is in Respondent's custody pursuant to a judgment entered on July 2, 2014, in Ontario County Court of New York State, following a jury verdict convicting him of two counts of second-degree criminal possession of a weapon (New York Penal Law ("P.L.") § 265.03(3)) and one count each of seventh-degree criminal possession of a controlled substance (P.L. § 220.03), third-degree criminal sale of marijuana (P.L. § 221.45), and fourth-degree criminal sale of marijuana (P.L. § 221.40). (*Id.*). For the reasons below, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## II.    <u>BACKGROUND</u>

### A. Indictment

On November 21, 2013, an Ontario County grand jury returned an indictment charging Petitioner with two counts of second-degree criminal possession of a weapon

(P.L. § 265.03(3)) for knowingly possessing a loaded revolver and a loaded semiautomatic handgun on October 15, 2013 (counts one and two); one count of seventh-degree criminal possession of a controlled substance (P.L. § 220.03) for knowingly possessing oxycodone hydrochloride on October 15, 2013 (count three); one count of third-degree criminal sale of marijuana (P.L. § 221.45) for selling an aggregate weight of more than 25 grams marijuana on October 14, 2013 (count four); and one count of fourth-degree criminal sale of marijuana (P.L. § 221.40) for selling a quantity of marijuana on October 11, 2013, that was not of an aggregate weight of two grams or less, or in one cigarette, and was not sold without consideration (count five).  (SR: 103-04).[1]

### B.  Trial, Verdict, and Sentence

Following jury selection and opening statements, the prosecution's direct case began on June 18, 2014, before Ontario County Court Judge Frederick G. Reed ("trial court").  The prosecution's chief witnesses were Cassandra DeLong ("DeLong") and several members of the Geneva Police Department (Detective Steven Vine ("Vine"), Detective Brian Choffin ("Choffin"), Lieutenant Eric Heieck ("Heieck"), and Sergeant Tyler Turner ("Turner")).

In October 2013, DeLong had been working as a paid informant for the Geneva Police Department making controlled drug buys for about a year.  (TT: 195-96).[2]  Although

---

[1]     Citations to "SR:" refer to the Bates-stamped page numbers of the state court records filed by Respondent at Dkt. 13-3 and Dkt. 13-4.

[2]     Citations to "TT:" refer to the pages of the trial transcript filed by Respondent at Dkt. 13-1 and Dkt. 13-2.

she had a criminal history, she was not "working off" any charges at the time.  (TT: 201-02).

DeLong had known Petitioner for several years and identified him at trial.  (TT: 196-97).  A few days before October 11, 2013, Vine asked her whether she knew Petitioner and could buy marijuana from him; DeLong replied affirmatively.  (TT: 337-38).  To set up the drug buys, DeLong contacted Petitioner via Facebook's private messaging application and said she was "looking . . . to buy some weed" and had heard he had "some good stuff."  (TT: 213-15).  DeLong told Petitioner that the marijuana was for her terminally ill mother who used it for pain management.  (TT: 210-11).  She also said that some of it was for her own use and some was to sell.  (TT: 210).

On October 11, 2013, and October 14, 2013, DeLong made two controlled buys from Petitioner, who then was living at 26 Park Avenue, #3 in Geneva, New York.  (TT: 195, 198-99, 202).  Prior to the buys, she met with Vine and Choffin at a prearranged location.  (TT: 197-98, 202-02, 285-86, 290).  The officers searched DeLong's person and car.  (TT: 197-98, 202-03, 285-86, 290, 338-39, 349-50).  After ensuring she did not have any other drugs or money in her car or on her person, Vine gave DeLong cash for the drug buy.  (TT: 339, 349, 354).  On October 11, Vine gave DeLong $200 in prerecorded buy money; on October 14, he gave her $500 in prerecorded buy money.  (TT: 198, 203, 339-40, 349-50).  On October 14, the detectives also provided DeLong with a key fob surveillance camera which she put on her key chain.  (TT: 203-04, 350-51).

DeLong then drove to Petitioner's neighborhood, parked, walked to his apartment, and knocked on the door.  (TT: 198-99, 203-04).  Petitioner answered the door, and DeLong

told him how much marijuana she wanted.  (*Id.*).  Choffin and Vine trailed DeLong in their vehicle as she drove to and from the drug buys.  (TT: 285-92, 340-42, 354).  Heieck hid in an area close to 26 Park Avenue and conducted surveillance of DeLong going into and out of Petitioner's apartment.  (TT: 266-69, 341).  Heieck recorded his observations on a cell phone and identified Petitioner as the person who answered the door at 26 Park Avenue, #3.  (TT: 269-74, 277, 281).

During the October 11, 2013 transaction, DeLong bought ten $20-bags of marijuana for $200 from Petitioner.  (TT: 199-200).  On October 14, 2013, DeLong paid $500 to Petitioner and received twenty-eight bags (two $10-bags and twenty-six $20-bags) of marijuana.  (TT: 204, 208, 271-74, 355).  On both occasions, DeLong observed Petitioner retrieve the marijuana from a Cocoa Pebbles cereal box, a false-bottomed Pringles container, and a false-bottomed A&W root beer container in his kitchen.  (TT: 204-08).

After the drug buys, DeLong returned to the meeting spot, turned over the bags of marijuana to Vine, and provided a deposition to Choffin.  (TT: 200-01, 209-10, 289, 292, 342-44, 355).  DeLong also returned the key fob surveillance camera which she had used to record the October 14 buy.  (TT: 209).  Choffin searched DeLong's car, and Vine searched her person.  (TT: 209-10, 290, 344, 355).  DeLong was paid $100 for each buy.  (TT: 201, 209-10, 344, 355).

Following the October 14, 2013 transaction, Vine applied for and obtained a search warrant from a Geneva City Court judge.  (TT: 360-61).  The next day, members of the Ontario County Sheriff's Department entered Petitioner's apartment pursuant to the search warrant, brought him outside, and placed him in a patrol car.  (TT: 274-75, 293-94, 361-

62, 400).  There was no one else inside the apartment.  (TT: 274-75).  Heieck, Choffin, and Vine were present but did not enter the apartment until after it was secured.  (TT: 274, 293, 324, 362).

Choffin read Petitioner his rights under *Miranda*.  (TT: 294-97, 362-63).  Petitioner acknowledged that he understood them and agreed to talk to the police.  (TT: 296-97, 363). Vine asked Petitioner if there were any firearms in the apartment and if so, where they were located.  (TT: 297, 331, 364).  Petitioner responded that there was a ".38" on the top of his dresser and a ".380 auto" in one of the dresser drawers.  (TT: 297, 331, 364).

Choffin searched the kitchen and found several false-bottomed containers; some were actually filled with bags of what appeared to be marijuana and some just had a strong marijuana odor.  (TT: 298-306, 308-09, 365).[3]  He also found a cereal box containing digital scales.  (TT: 306-07).  Vine retrieved thirteen pink pills from the top drawer of the bedroom dresser, which the parties stipulated to be oxycodone.  (TT: 367-70).  Vine located a loaded .38-caliber Smith and Wesson revolver wrapped with cash laying on top of the bedroom dresser; $100 of the cash was prerecorded buy money from the Geneva Police Department.  (TT: 371-77, 420).  Vine also found a loaded .380-caliber Lorcin automatic handgun in the second drawer of the dresser, along with a white towel wrapped around several more bullets.  (TT: 379-80, 383).

---

[3]    The parties stipulated to the results of the forensic chemical tests that the substances purchased by DeLong on October 11, 2013, and October 14, 2013, were marijuana, as were the substances seized from Petitioner's kitchen on October 15, 2013.  (TT: 349, 359).  The parties also stipulated to the weights of those substances.  (*Id.*).

Petitioner was transported to the police station, where Vine continued to interview him.  (TT: 387-88, 392).  The interview was videotaped, and a recording of it was played for the jury.  (TT: 392-93, 395 & People's Exhibit 39).  During the interview, Petitioner acknowledged possession of the guns and told Vine how much he paid for each gun.  (TT: 395).

Turner test fired the Smith & Wesson revolver and the Lorcin semi-automatic handgun.  He determined that both were operable and fired as intended by the manufacturer.  (TT: 416-27).

The prosecution rested.  (TT: 427).  Defense counsel made a motion for a trial order of dismissal.  (TT: 432-43, 446-50).  The trial court reserved decision and allowed all charges to go to the jury.  (TT: 450).  Petitioner elected not to testify (TT: 444-46), and the defense rested (TT: 460).

The jury returned a verdict convicting Petitioner as charged in the indictment.  (TT: 523-25).  The prosecution applied to have Petitioner adjudicated a second violent felony offender.  (SR: 198-99).  Petitioner denied his status as a second violent felony offender, and the trial court held a hearing on the prosecution's application on July 2, 2014.[4]  (SR: 25-26).  After the hearing, the trial court adjudicated Petitioner a second violent felony offender and denied the pending motion for a trial order of dismissal.  (*Id.*).  The trial court imposed concurrent determinate terms of fourteen years' imprisonment on counts one and

---

[4]     None of the pre-trial or post-verdict transcripts are contained in either of the two volumes of transcripts submitted by Respondent.

two, lesser concurrent sentences on the remaining charges, and five years' post-release supervision.  (*See* SR: 10).

## C.  Direct Appeal

Through assigned appellate counsel, Petitioner appealed his conviction.  (SR: 1-76). The Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") unanimously affirmed the conviction on February 9, 2018.  *People v. Navarro*, 158 A.D.3d 1242 (4th Dep't 2018).  The New York Court of Appeals denied leave to appeal on June 21, 2018.  *People v. Navarro*, 31 N.Y.3d 1120 (2018).

## D.  Collateral Motions in State Court

On June 8, 2018, Petitioner filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 ("440 motion") in Ontario County Court.  (SR: 252-350).  The Ontario County Court (Reed, J.) ("440 court") denied the motion without a hearing on June 20, 2018.  (SR: 365-66).  The Appellate Division denied leave to appeal on March 21, 2019 (SR: 378), and denied reargument on July 10, 2019 (SR: 386).

Petitioner filed a second 440 motion on January 2, 2019.  (SR: 387-416).  By order dated January 9, 2019, the 440 court denied the motion.  (SR: 422-23).  The Appellate Division denied leave to appeal.  (SR: 411-16).

In papers dated May 21, 2019, Petitioner filed a *pro se* application for a writ of error *coram nobis*.  (SR: 424-490).  As Respondent notes, Petitioner filed essentially the same motion on June 3, 2019 (SR: 490-559), perhaps because the previous *coram nobis* application was not accepted for filing.  (Dkt. 14 at 10 n.3; *see also* SR: 560 (prosecution's

letter responding to Appellate Division's June 6, 2019 letter requesting a response to the *coram nobis* application)).  The Appellate Division summarily denied *coram nobis* relief on September 27, 2019.  *People v. Navarro*, 175 A.D.3d 1851 (4th Dep't 2019).  The New York Court of Appeals denied leave to appeal.  *People v. Navarro*, 34 N.Y.3d 1080 (2019).

On February 11, 2020, Petitioner filed a second *pro se* application for a writ of error *coram nobis*.  (SR: 615-55).  The Appellate Division summarily denied the application on July 17, 2020.  *People v. Navarro*, 185 A.D.3d 1480 (4th Dep't 2020).  The New York Court of Appeals denied leave to appeal.  *People v. Navarro*, 35 N.Y.3d 1096 (2020).

### E.  Federal Habeas Proceeding

The timely filed § 2254 petition (Dkt. 1) asserts the following grounds for relief: (1) Detective Vine obtained the search warrant under "false pretenses," and the search warrant was overbroad and improperly executed in violation of the Fourth Amendment (*id.* at 6, Ground One); (2) the trial court erroneously relied on the grand jury minutes to deny the request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and *People v. Alfinito*, 16 N.Y.2d 181 (1965) ("*Franks/Alfinito* hearing") and violated Petitioner's due process rights under the Fourteenth Amendment (Dkt. 1 at 8, Ground Two); (3) the prosecution suppressed favorable exculpatory and impeachment material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (Dkt. 1 at 9, Ground Three); and (4) the prosecutor failed to present the certificate of relief from civil disabilities to the grand jury which would have established a defense to the charges under P.L. § 265.03(3) or warranted a charge-down to third-degree criminal possession of a weapon under P.L. § 265.02(5)(ii); and the

indictment violated Petitioner's Second Amendment right to bear arms and his Fourteenth Amendment rights to due process and equal protection (Dk. 1 at 11, Ground Four).

Respondent filed a response (Dkt. 13), memorandum of law (Dkt. 14), and the state court records and transcripts (Dkt. 13-1 to Dkt. 13-4).  Petitioner filed a reply (Dkt. 16) that reargues his original claims and asserts new grounds for relief.  He claims that because the Geneva City Court did not produce any "search warrant transcripts" in its review of the warrant application, there was a "mode of proceedings error" under C.P.L. § 690.40(1). (*Id.* at 9).  He notes that the trial court previously had represented the defendant in *People v. Flook*, 164 Misc. 2d 284 (N.Y. Sup. Ct. 1995), and argues that the judge in that case made rulings in Petitioner's case that were favorable to Petitioner's petition.  Despite having knowledge of the outcome of *Flook*, the trial court did not dismiss the weapons charges in Petitioner's case.  (*Id.* at 17-18).  Petitioner further asserts that the defendant in *Flook* and another defendant in a 2018 Ontario County Court case named Erika A. Martin[5] were Caucasian, which was "very strong evidence of racial discrimination and a violation under the Equal Protection Clause".  (*Id.* at 2).

Petitioner also supplements his Second Amendment argument and asserts an actual innocence claim based on his allegation that he was allowed to possess a firearm under the "Federal Gun Control Act."  (*Id.* at 19).

---

[5]    Petitioner has attached several pages from the transcript of Martin's *Alford* plea before Ontario County Court Judge William F. Kocher on April 30, 2018; the prosecutor was the same individual who prosecuted Petitioner.  (Dkt. 16 at 83-85).

Lastly, Petitioner claims that trial counsel was ineffective because he failed to request that the trial court review the "search warrant transcripts;" failed to raise a *Brady* claim regarding the "(Facebook)" evidence; failed to move to renew the motion for a *Franks*/*Alfinito* hearing after Vine's trial testimony; failed to move for a trial order of dismissal based on the defense having proved entrapment; only contemplated calling one defense witness, Willie Valez,[6] who was a "fake (Facebook) account;" failed to investigate and produce the files that would have contradicted the prosecutor's "fabrication" that the certificate of relief from disabilities was invalidated by subsequent misdemeanor convictions; and "collaborated with [the prosecutor] so that the trial jury would not hear anything about the defendant's certificate of relief." (*Id.* at 20-21).

### III.   CLAIMS IN PETITIONER'S REPLY

The Rules Governing Section 2254 Cases in the United States District Courts provide, in part, that "[t]he petition must . . . specify all grounds for relief available to the petitioner." Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. foll. § 2254.  "In light of this Rule, it has been recognized that a traverse [or reply] is not the proper pleading in which to raise additional grounds for habeas relief." *Jones v. Artus*, 615 F. Supp. 2d 77, 85 (W.D.N.Y. 2009) (citing *Parker v. Duncan*, No. 03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*,

---

[6]     Prior to trial, defense counsel indicated that Valez was a potential witness.  (TT: 37).  DeLong testified on cross-examination that she used Valez's Facebook account to message Petitioner the first time because initially she did not have her own account.  (TT: 214).  Valez was one of her ex-boyfriends.  (*Id.*).  That was the extent of the line of questioning with regard to Valez, who was not called as a defense witness.

255 F. App'x 565 (2d Cir. 2007)).  "To raise additional grounds, a petitioner must file an amended petition to provide adequate notice to the state of additional claims."  *Howard v. Graham*, No. 905-CV-1582 LEK/DRH, 2008 WL 3925466, at *1 n.3 (N.D.N.Y. Aug. 20, 2008) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

Petitioner did not seek permission from the Court to add new grounds for habeas relief in his reply.[7]  Therefore, any new claims asserted in the reply are not properly before the Court, and they will not be considered.  *See*, *e.g.*, *Voymas v. Unger*, No. 10-CV-6045 MAT, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011) ("[T]he Court declines to consider any new 'stand-alone' or 'freestanding' claims of actual innocence or ineffective assistance of appellate counsel in his Traverse."); *Simpson v. United States*, No. 5:00-CR-373, 2005 WL 3159657, at *5 (N.D.N.Y. Nov. 25, 2005) ("[The] Court will not consider the claims that Petitioner raised for the first time in his Traverse as a basis for awarding him relief in this action.").  The sole exception is that the Court will consider Petitioner's references in the reply to the *Flook* and *Martin* cases in support of his equal protection claim asserted in Ground Four.

---

[7]      Petitioner did subsequently seek to amend his petition after he filed his reply, but the proposed amendment had nothing to do with the new issues raised by Petitioner in his reply papers.  (*See* Dkt. 28).  The Court denied Petitioner's motion to amend on grounds of futility.  (Dkt. 35).  The Court indicated that it would consider Petitioner's arguments concerning the vacatur of his underlying convictions for third- and fourth-degree criminal sale of marijuana to the extent they otherwise supported the arguments set forth in his petition (*id.*), but those arguments are irrelevant to the issues discussed herein.

IV.   **STANDARD OF REVIEW**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence."  *Id*. § 2254(e)(1).  AEDPA articulates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)."  *Harrington*, 562 U.S. at 98.  "[W]hen it is unclear whether AEDPA deference applies," the Supreme Court has stated that courts may "deny writs of habeas corpus under § 2254 by engaging in *de novo* review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or

her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## V.   **DISCUSSION**

### A.  **Unlawful Search Warrant (Ground One)**

In Ground One, Petitioner challenges the "[i]llegal search warrant and [its] improper execution." (Dkt. 1 at 6).  He also asserts that:

> Detective Vine brought the case to warrant issuing magistrate under false pretenses.    Claiming  a  confidential  informant  approached  with  the proposition to purchase marijuana.  When in fact, which was later admitted to in open court, [D]etective Vine actually coerced the C.I. Cassandra Delong to try and purchase marijuana from the Applicant.  Totally omitting the later proven fact that detective Vine clearly entrapped Applicant.

(*Id.*).

Respondent contends that the Fourth Amendment violations asserted in Ground One are barred from habeas review by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), because Petitioner had a full and fair opportunity to litigate the claim in state court.  (Dkt. 14 at 12-13).  In his reply (Dkt. 16), Petitioner did not address Respondent's argument regarding the *Stone* bar.

In *Stone*, the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 481-82 (emphasis supplied).  "Notably, all that must be shown is that the State has provided an opportunity to litigate the petitioner's Fourth Amendment claim; it matters not whether

the petitioner actually 'took advantage of the State's procedure.'"  *Griffin v. Duncan*, 439

F. Supp. 2d 258, 260 (W.D.N.Y. 2006) (quoting *Graham v. Costello*, 299 F.3d 129, 134

(2d Cir. 2002)).

   A petitioner may be able to avoid *Stone*'s bar in one of two situations—the state

provided "no corrective procedures at all" for review of alleged Fourth Amendment

violations, or the petitioner was "precluded from using" the corrective procedures "because

of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d

67, 70 (2d Cir. 1992).  Neither scenario is applicable here.

   "A petitioner receives a 'full and fair opportunity' to litigate his Fourth Amendment

claim where the state provides a '"statutory mechanism" for suppression of evidence tainted

by an unlawful search and seizure.'"  *Ferron v. Goord*, 255 F. Supp. 2d 127, 131 (W.D.N.Y.

2003) (quoting *McPhail v. Warden, Attica Corr. Fac.*, 707 F.2d 67, 69 (2d Cir. 1983)).

"[T]he 'federal courts have approved New York's procedure for litigating Fourth

Amendment claims, embodied in N.Y. Crim. Proc. L. § 710.10 *et seq.*, as being facially

adequate.'"  *Capellan*, 975 F.2d at 70 n.1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201

(E.D.N.Y. 1989)).  Here, Petitioner took full advantage of New York's statutory process.

After being provided with Detective Vine's affidavit (SR: 116-18) in support of the search

warrant application, Petitioner filed an omnibus motion (SR: 124-31) challenging the facial

sufficiency of the warrant application and requesting, *inter alia*, suppression of the evidence

seized from his apartment and a *Franks/Alfinito* hearing.

   Proceedings on the omnibus motion were held on January 30, 2014.  (SR: 13-14).

The prosecution indicated that a confidential informant (i.e., DeLong) had prepared an

affidavit which was reviewed by the issuing judge.  (SR: 14).  Defense counsel asked the trial court to review the confidential informant's affidavit as well as the search warrant application to verify that there was probable cause to issue the warrant.  (*Id.*).  On February 5, 2014, the trial court issued a written decision and order finding that the Detective Vine's affidavit was sufficient to satisfy the Fourth Amendment.  (SR: 139-41).

Petitioner reasserted the search warrant claims on direct appeal (SR: 39-46), and the Appellate Division rejected them as unpreserved and, in any event, without merit. *Navarro*, 158 A.D.3d at 1243-44.  The Appellate Division determined that even assuming there was no probable cause to believe that weapons would be located in Petitioner's apartment, "the two firearms were properly seized" because the "officers were lawfully in a position to observe the firearms and had lawful access to them when they seized them, and the incriminating character of the [firearms] was immediately apparent."  *Id.* at 1244 (alterations in original) (internal quotation marks omitted).

The Appellate Division also found that Petitioner failed to make a substantial preliminary showing that Vine included a false statement in his search warrant affidavit and that such false statement was necessary to the probable cause finding.  *Id.* at 1243.  The Appellate Division explained that a *Franks/Alfinito* hearing was not required because Petitioner challenged only the warrant's facial validity as opposed to the validity of the information it contained.  *Id.*  The Appellate Division noted that the warrant was based on information observed by Vine firsthand as he monitored the controlled drug buy conducted by DeLong, which in turn established her reliability.  *Id.*

- 15 -

Petitioner has not attempted to demonstrate that an "unconscionable breakdown" occurred while he was litigating his Fourth Amendment claims in state court. He has simply reiterated that the trial court and the Appellate Division ruled in error. As the Second Circuit explicitly has held, "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. Petitioner therefore cannot overcome the preclusive effect of *Stone*, and the Fourth Amendment claims in Ground One are barred from habeas review.

### B. Erroneous Reliance on the Grand Jury Minutes to Deny the Request for a *Franks/Alfinito* Hearing (Ground Two)

In Ground Two, Petitioner contends that the trial court violated his due process rights under the Fourteenth Amendment because it improperly considered the grand jury minutes in deciding not to hold a *Franks/Alfinito* hearing. (Dkt. 1 at 8). Respondent has not addressed the claim articulated in Ground Two but instead has assumed that Petitioner is reasserting the same claim raised in his appellate brief regarding the denial of a *Franks/Alfinito* hearing. (Dkt. 14 at 12-14). However, Petitioner indicates that he did not raise this claim on direct appeal because appellate counsel "ignored" his request to include the issue. (Dkt. 1 at 8).

Petitioner asserted this claim in support of his first 440 motion. (*See* SR: 260-61; 359). However, it appears that the 440 court may have overlooked the claim in disposing of the motion; the 440 court simply noted that the Appellate Division previously had held that a *Franks/Alfinito* hearing was not required. (SR: 366). The *Franks/Alfinito* claim

raised in the appellate brief was not the same as the specific argument asserted in the 440 motion—that the trial court erroneously relied on the grand jury minutes in denying a *Franks/Alfinito* hearing.

To support his assertion that the trial court found facts based on the contents of the grand jury minutes, Petitioner relied on the following excerpt from page 28 (lines 14 to 22) of the transcript of the *Huntley* hearing held on February 14, 2014, regarding the suppression of Petitioner's statements to the police:

> [DEFENSE COUNSEL]: Judge, I think there was only one other issue that hasn't been addressed yet, and that was the sufficiency of the search warrant application.
>
> [PROSECUTOR]: *That was addressed in the decision as it related to the*
>
> THE COURT: *Grand jury*.
>
> [PROSECUTOR]: -- *grand jury minutes*.
>
> [DEFENSE COUNSEL]: Oh, okay. I'm sorry, Judge.  I'll come back.
>
> THE COURT: *Dated February 5th*, Robert, so if you don't have the decision—I assume you do, but if you don't, let us know.

(SR: 305) (emphases supplied).  The trial court was referring to its February 5, 2014 decision and order (SR: 139-41) finding that the "affidavit presented to the issuing magistrate" was sufficient to support the search warrant.  (SR: 140).

A review of the state court records makes clear that the prosecutor and the trial court simply misspoke at the *Huntley* hearing when they said that the sufficiency of the warrant application was addressed in the same decision in which the sufficiency of the grand jury evidence was evaluated.  Contrary to the comments by the prosecutor and the trial court,

the February 5, 2014 decision (SR: 139-41) contained no mention of the grand jury

minutes.  Rather, the sufficiency of the grand jury minutes was addressed in a separate

decision and order issued by the trial court the following day, February 6, 2014.  (SR: 142).

In the February 6 decision, the trial court denied Petitioner's motion to dismiss, finding

that upon review of the grand jury minutes, the evidence submitted to the grand jury was

sufficient to support the indictment.  (*Id.*).

Moreover, the text of the February 5, 2014 decision refutes Petitioner's assertion

that the trial court found facts based upon its review of the grand jury minutes.  In its factual

findings, the trial court referred only to Vine's affidavit:

> The affidavit presented to the issuing magistrate in this case sufficiently
> meets th[e] [Fourth Amendment's warrant] standard.  The information
> involving the defendant in criminal activity was set out in detail, as was the
> means by which the information was acquired.  The Affidavit of Detective
> Steven Vine related knowledge of Defendant's criminal activity gained from
> two controlled buys made by a reliable confidential informant under the
> observation of himself and other members of the Geneva Police Department.
> The confidential informant not only purchased marijuana from the Defendant
> on two separate occasions but also related observation of the Defendant's
> method of storage in the home and the fact that additional quantities of
> marijuana were stored there.  After each controlled buy, the substances
> purchased were field tested and determined to be marijuana.  The information
> furnished was not based upon casual rumor; surmise, suspicion[,] or general
> reputation of the defendant.  From this sworn information the Magistrate
> could have reasonably believed that the defendant had committed criminal
> acts, the fruits of which were openly stored in and about his residence.
>
> The confidential informant's reliability was established based on prior
> investigations in which the informant had provided information and
> successfully purchased narcotics.  Those investigations resulted in the
> seizure of narcotics and the arrests of the persons involved.
>
> Paragraph 4 of Detective Vine's Affidavit indicates that Judge Buckley did
> see the sworn statements of the confidential informant and knew the
> informant's identity prior to the issuance of the warrant.

(SR: 140).

It is unclear to this Court why appellate counsel made the following comment to Petitioner in response to his request to include this argument on appeal:

> You are correct that the *Huntley* Hearing transcript does indicate that the trial court's decision to deny a *Franks/Alfinito* Hearing was related to the Grand Jury minutes.  However, *the written Decision and Order upholding the sufficiency of the Search Warrant supplements the oral decision.*  Enclosed please find a copy of the trial court's Decision and Order.

(SR: 461) (emphasis supplied).  The trial court's statement at the *Huntley* hearing on February 14, 2014, was not an "oral decision" as to the sufficiency of the search warrant. The trial court merely was clarifying for defense counsel that it had already determined the search warrant issue in a written decision on February 5, 2014, which, according to the trial court and the prosecutor, also addressed the sufficiency of the grand jury minutes.  (SR: 305).  As noted above, that assertion was erroneous.

Even assuming for the sake of argument there was an "oral decision" issued at the *Huntley* hearing, the written decision dated February 5, 2014, predated the purported oral decision by nine days—it therefore could not have "supplemented" it.  In sum, Petitioner's claim that the trial court erroneously relied on the grand jury minutes to deny the *Franks/Alfinito* hearing lacks an arguable basis in fact.

This argument also does not present a federal constitutional question amenable to habeas review.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a).  Thus, "[a] claim that a state

conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005).

Although Petitioner has characterized this claim as a due process violation, he has only cited a handful of decisions out of the intermediate appellate courts in New York State, beginning with *People v. Werner*, 55 A.D.2d 317 (4th Dep't 1977). In *Werner*, the lower court failed to follow the procedure prescribed in C.P.L. § 710.60 for determining whether a hearing should be held on a motion to suppress. In particular, C.P.L. § 710.60(4) provides that "[i]f the court does not summarily grant the suppression motion pursuant to subdivision 2 [of section 710.60] or summarily deny it pursuant to subdivision 3 [of section 710.60], then 'it *must* conduct a hearing . . . ." *Werner*, 55 A.D.2d at 319-20 (emphasis supplied) (quoting N.Y. Crim. Proc. Law § 710.60 (4)). However, the lower court "followed none of the alternative courses prescribed by the statute," and while no hearing was held, it was "plain that facts dehors the affidavits were considered," including the grand jury minutes. *Id.* The *Werner* court explained that "the fault with this practice is that the facts were taken from records in proceedings where the suppression issues were not the focus of the inquiry," *id.*, and in the case of a grand jury proceeding, "the accused's right to adduce evidence is so limited (*see*, CPL [§] 190.50) that he is in no position to subject critical facts to thorough adversarial scrutiny." *Id.*

In *Werner*, the appellate court did not refer explicitly or implicitly to the federal constitution. Instead, it merely found that the defendant could not have developed his suppression argument adequately because of the limited opportunity to present evidence and question witnesses at the grand jury proceeding. But it is well settled that "there is no

federal constitutional right to be indicted by a grand jury prior to trial in a state criminal action." *Velez v. People of State of N.Y.*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996) ("The Supreme Court has long held that the United States Constitution's Fifth Amendment provision for presentment or indictment by grand jury does not apply to the several states through the Fourteenth Amendment.") (collecting cases).   Although New York State's Constitution guarantees a defendant's right to be indicted for certain crimes, *id.*, "his right to appear before the grand jury is purely statutory." *Id.* (citing N.Y. Crim. Proc. Law § 190.50).

Thus, even if the trial court ran afoul of *Werner*'s instructions, which Petitioner has not established, this does not state a cognizable habeas claim.   *See*, *e.g.*, *Wearing v. Lavalley*, No. 10-CV-8307 PO, 2015 WL 6738327, at *19 (S.D.N.Y. Nov. 4, 2015) ("A claim premised on a violation of [C.P.L. §§] 710.40(3) and 710.60(6) does not allege a violation of a federally protected right." (citing *Robinson v. Graham*, 671 F. Supp. 2d 338, 359 (N.D.N.Y. 2009) (concluding that failure to hold a hearing as required by C.P.L. § 710.60 was a state law issue not entitled to habeas review); *Young v. Superintendent, Upstate Corr. Fac.*, 00 Civ. 8179(LAK) (JCF), 2001 WL 1488598 at *4 (S.D.N.Y. Oct. 29, 2001) (finding that claim alleging a violation of C.P.L. § 710.40(3) was an issue of state law and did not implicate a violation of a right under the federal constitution)).   Ground Two does not warrant habeas relief and is denied.

C. *Brady* Violation (Ground Three)

   1.  **Background**

In Ground Three, Petitioner asserts that the prosecutor "knowingly suppressed exculpatory as well as impeachment evidence," and the trial court "erred in [its] ruling as to the application of *Brady* as it pertains to this case. (Facebook)." (Dkt. 1 at 9). Petitioner raised this claim in the first 440 motion, arguing that the prosecutor withheld: (1) DeLong's affidavits provided to Vine in support of the search warrant application, and (2) Facebook messages between Petitioner and DeLong. (*See* SR: 268-78 (first 440 motion); SR: 353 (prosecution's opposition); SR: 359-60 (Petitioner's reply)). Petitioner complained that although the prosecutor turned over Vine's search warrant affidavit (SR: 116-18) pursuant to the mutual discovery order, the prosecutor did not provide the defense with DeLong's supporting affidavits (SR: 310-11) until June 17, 2014, the first day of trial. (SR: 269).

Petitioner argued that there were discrepancies between Vine and DeLong's search warrant affidavits and their testimony at trial with regard to who contacted who first about purchasing marijuana. (SR: 269-70). According to Petitioner, these discrepancies would have proven that Vine made materially false statements in support of his search warrant affidavit and would have allowed Petitioner to demonstrate entitlement to a *Franks/Alfinito* hearing. (SR: 271-72).

In relevant part, Vine said in his affidavit that:

on 10/8/2013 [he] and other members of the Geneva Police Department Drug Enforcement Unit met with a reliable and confidential source herein referred [to] as (CS). (CS) had advised officers that a Vangie Navarro was selling marihuana from 26 Park Ave, #3. . . . Vangie Navarro had told (CS) that he

can get any amount of marihuana that they needed and that (CS) just had to let Vangie Navarro know how many they wanted.

(SR: 116).

In her October 11, 2013 affidavit, DeLong stated that she had talked to Vine the previous Friday and "told him that [*she*] *had been contacted by this guy named Vangie*, Vangie Navarro is his name and he sells marihuana.  Vangie told [her] that he had all of his marihuana bagged up and that he was ready to sell."  (SR: 310 (emphasis supplied)).  Petitioner argued that this was inconsistent with DeLong's testimony that she contacted Petitioner first on Facebook because she had been hired by the Geneva Police Department to do so.  (SR: 269 (citing TT: 213-14, 242)).

Petitioner also claimed that the prosecutor had been told personally by DeLong that that Petitioner had contacted her on Facebook first, yet the prosecutor withheld this information until the day of trial.  (SR: 269, 271).  Petitioner was referring to comments made by the prosecutor during a pre-trial hearing on June 17, 2014, about what DeLong had told the police before the raid, specifically, whether she knew about the guns.  (*See* TT: 10-13).  The prosecutor "indicated that the *Defendant in fact had hit her up on Facebook*, and she was able to buy marijuana" from him, but she "had never indicated that she had seen or known the Defendant to have weapons."  (TT: 13-14) (emphasis supplied).

In opposition to the 440 motion, the prosecutor noted that by Petitioner's own admission, DeLong's affidavits were provided on the first day of trial, and therefore Petitioner's due process rights were not violated because he had a meaningful opportunity to use the allegedly favorable material.  (SR: 353).  The prosecutor did not address

Petitioner's actual claim—that he was denied the opportunity to use the alleged *Brady* material to support his pre-trial application for a *Franks/Alfinito* hearing.

The 440 court denied the *Brady* claim as procedurally barred under C.P.L. § 440.10(2)(c) because it relied on matters of record and therefore was required to have been raised on direct appeal. (SR: 453).[8]  The 440 court did not address the claim's merits.

### 2.  Procedural Default

Respondent, like the prosecutor in state court, has not addressed Petitioner's claim that the alleged *Brady* violation affected the suppression proceedings.  Respondent argues that since the 440 court denied the *Brady* claim pursuant to an adequate and independent state ground, C.P.L. § 440.10(2)(c), it is procedurally defaulted and barred from habeas review.  (Dkt. 14 at 15-16 (citing *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).

---

[8]  Based on the 440 court's ruling, Petitioner subsequently asserted the *Brady* claim in the first *coram nobis* application as a predicate for his ineffective assistance of appellate counsel claim.  (*See* SR: 499-500 (arguing that appellate counsel did not raise the *Brady* claim despite being requested to do so); *see also* Dkt. 1 at 10 (stating that he did not raise the *Brady* claim on direct appeal because appellate counsel "ignored [his] request about thi[s] issue")).  Petitioner does not assert any claims of ineffective assistance of appellate counsel in the petition.  Furthermore, a *coram nobis* application is not the proper vehicle for presenting a standalone *Brady* claim; *coram nobis* review is reserved for "errors at the appellate level, including ineffectiveness of appellate counsel, not trial errors."  *Ehinger v. Miller*, 928 F. Supp. 291, 294 (S.D.N.Y. 1996) (citing *Mathis v. Hood*, 851 F.2d 612, 615 (2d Cir. 1988)).  Since Petitioner previously raised the *Brady* claim in his first 440 motion and sought leave to appeal, he exhausted this claim.  *See, e.g.*, *Reyes v. Phillips,* No. 02 CIV. 7319 (LBS), 2005 WL 2173812, at *4 (S.D.N.Y. Sept. 6, 2005) ("[T]to properly exhaust claims raised in an unsuccessful § 440.10 motion, a habeas petitioner must seek leave to appeal the denial of the motion to the Appellate Division." (citing *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

Respondent further contends that, in any event, the evidence was not suppressed and was not material to the verdict. (*Id.*).

Where the last-reasoned state court opinion rejected a constitutional claim based upon an adequate and independent state ground, habeas review is precluded unless the petitioner shows cause for the default and prejudice resulting from it, or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989). The adequacy and independence of the state ground are questions for the federal habeas court. *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).

In this case, C.P.L. § 440.10(2)(c) clearly was an independent ground for the 440 court's decision; it did not rule alternatively on the merits. However, the Court has some doubt whether it is "firmly established and regularly followed," *Garcia*, 188 F.3d at 77 (quotation omitted), by New York state courts where, as here, the *Brady* claim involves material that was not part of the trial record, *see*, *e.g.*, *Pearson v. Ercole*, No. CV-06-5315(BMC), 2007 WL 2128350, at *15 (E.D.N.Y. July 25, 2007) ("Cases raising *Brady* issues that depend in part on off the record material are regularly heard under § 440. When a defendant attempts to raise a *Brady* claim on direct appeal concerning matters that are outside the record, the New York courts almost invariably reject the appeal, remitting the defendant to a § 440 motion, if one is available.") (collecting cases), *aff'd*, 310 F. App'x 445 (2d Cir. 2009). Here, defense counsel never raised the possibility of a *Brady* claim before the trial court, and DeLong's affidavits and the Facebook messages were not made part of the record. Although the Facebook messages were mentioned by DeLong and Vine

at trial, they were not introduced into evidence.  This seems to be the type of *Brady* claim that properly could be raised in a 440 motion.  *See id.*

"[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit."  *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011) (alteration in original) (quoting *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 439 (S.D.N.Y. 2003); citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)).  In the present case, judicial efficiency favors bypassing the more complicated procedural issue and resolving Petitioner's *Brady* claim on the merits.

Because there is no alternative adjudication on the merits by the 440 court to which deference under 28 U.S.C. § 2254(d) is owed, the Court analyzes the claim under a *de novo*, pre-AEDPA standard.  *See*, *e.g.*, *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006) ("If a federal claim has not been adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*."); *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (same).

### 3.  Legal Principles

*Brady* held that the suppression of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  "[T]he withholding of [favorable] evidence does not violate the accused's due process right unless the evidence is 'material,' in the sense that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Fuentes*

*v. T. Griffin*, 829 F.3d 233, 246 (2d Cir. 2016) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "It is well settled that evidence 'is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.'"  *United States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997) (alteration in original) (quoting *United States v. Gonzalez*, 110 F.3d 936, 944 (2d Cir. 1997)).  It is well-settled that "disclosure prior to trial is not mandated" under *Brady*.  *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (collecting cases).  Instead, due process requires disclosure of *Brady* material "in time for its effective use *at trial*."  *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (emphasis supplied).

As noted above, Petitioner argues that because the *Brady* material was not disclosed until the first day of trial, he did not have an effective opportunity to use it to support his pre-trial application for a *Franks/Alfinito* hearing.  His *Brady* claim is thus premised on the existence of a disclosure obligation well in advance of trial.  "Whether *Brady* and its progeny require disclosures in advance of pre-trial hearings is an open question in this circuit."  *United States v. Nelson*, 193 F. App'x 47, 50 (2d Cir. 2006).  The Ninth and Fifth Circuits have determined that *Brady* applies in this context.  *Id.* (citing *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ("[W]e hold that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant."); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990) (similar), *vacated on other grounds*, 503 U.S. 930 (1992)).

Other circuits, in *dicta*, have expressed doubt that *Brady* applies to suppression proceedings.  *Id.* (citing *United States v. Stott*, 245 F.3d 890, 902 (7th Cir. 2001); *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999); *United States v. Williams*, 10 F.3d 1070, 1077 (4th Cir. 1993)); *see also United States v. Dahl*, 597 F. App'x 489, 491 n.2 (10th Cir. 2015) (stating that "*Brady* rests on the idea that due process is violated when the withheld evidence is material to either guilt or punishment," but "[s]uppression hearings do not determine a defendant's guilt or punishment").  The Second Circuit in *Nelson* found it unnecessary to decide the issue in light of its decision to remand the matter for a suppression hearing and the possibility the issue could be mooted.  *See id.*

The Supreme Court "has not had the occasion to determine whether th[e] [*Brady*] rule requires disclosure of impeachment evidence prior to a suppression hearing."  *Stott*, 245 F.3d at 901.  But in *Ruiz*, the Supreme Court concluded that the Constitution does not require disclosure of impeachment information prior to a guilty plea.  536 U.S. at 629.  It reasoned that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is voluntary."  *Id.* (emphasis in original).  "[T]he more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be.  But the Constitution does not require the prosecutor to share all useful information with the defendant."  *Id.* (citing *Weatherford v. Bursey*, 429 U.S. 544, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.")); *cf. United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022) (recognizing applicability of *Brady* to plea proceedings).

Since the Court is reviewing the *Brady* claim unconstrained by the limitations in § 2254(d), and because it makes no difference to the outcome of the petition, the Court will analyze whether Petitioner has stated a meritorious *Brady* violation in either the suppression context or at trial. *See United States v. White*, 489 F. Supp. 3d 274, 280 (S.D.N.Y. 2020) (citing district court cases in the Second Circuit that have assumed that *Brady* applies in the suppression context, but then concluding that there was no violation).

### 4. The *Brady* Claim and the Suppression Proceedings

Petitioner has not established that the allegedly withheld materials—DeLong's affidavits and the Facebook messages between her and Petitioner—were favorable, much less material to the outcome of his attempt to suppress evidence. As set forth above, Vine said in his affidavit that a reliable confidential informant, i.e., DeLong, "had advised" him that Petitioner was selling marijuana out of his apartment. Vine did not specifically state who—DeLong or Petitioner—initiated contact with whom. While DeLong stated in her October 11, 2013 affidavit that Petitioner had reached out to her first, that is not inconsistent with her having later advised Vine that Petitioner was selling marijuana out of his apartment.

Moreover, even when viewed in light of his subsequent trial testimony, there is no basis to conclude that Vine's search warrant affidavit contained a materially false statement. Vine testified that he "asked [DeLong] if she knew who he was, and she said yes and that she could buy [marijuana] from him." (TT: 338). Again, Vine's statement that he had been advised by DeLong that Petitioner was selling marijuana out of his

apartment was not inconsistent with DeLong telling Vine that she could buy marijuana from Petitioner.

With regard to the Facebook messages, Petitioner, as one of the two parties to the Facebook conversations with DeLong, would have known the contents of the messages and whether they were favorable to the defense. Petitioner therefore cannot demonstrate that the Facebook messages were suppressed by the prosecution. *See Torres*, 129 F.3d at 717 (stating that tape-recordings of phone calls were not suppressed because "even if the tapes might have led counsel to discover additional witnesses, Mendez, as a participant in the conversations, would have already known of such witnesses"). Petitioner further has not presented any evidence that the messages would have been favorable, let alone exculpatory. Thus, to the extent that *Brady* applies in the suppression context, Petitioner has not established any of the requisite three elements of a true *Brady* violation. Therefore, he is not entitled to habeas relief on this claim.

### 5.  The *Brady* Claim at Trial

Petitioner has not established that DeLong's affidavits and the Facebook messages were exculpatory or material to the verdict. Petitioner raised an entrapment defense at trial,[9] arguing that DeLong, acting as a paid confidential informant for the Geneva Police

---

[9]     In New York State, the entrapment defense is codified at P.L. § 40.05:

> In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed

Department, induced Petitioner to selling marijuana to her.  Petitioner "bore the burden of establishing entrapment by a preponderance of the evidence." *People v. Brown*, 82 N.Y.2d 869, 871 (1993).  More particularly, he was required to establish the following elements: (1) he was "actively induced or encouraged to commit the offense" by a public official; (2) he was "not otherwise disposed to commit" the offense; and (3) the public official's inducement or encouragement created a "substantial risk" he would commit the offense. *Id.*

Petitioner was a party to the conversations on Facebook, but he has provided no basis to believe that there was favorable, let alone material, non-cumulative evidence in the Facebook messages between himself and DeLong.  And DeLong's affidavits clearly were not helpful to establishing the entrapment defense.  Indeed, the statement in the October 11, 2013 affidavit (SR: 310) that Petitioner had reached out to her first undermined his ability to show that he was not otherwise disposed to sell marijuana.  In her October 14, 2013 affidavit, DeLong stated that she reached out to Vine about conducting another drug-buy with Petitioner, who had "told [her] that he was 'good for anything [she] need[s].'" (SR: 311).  Petitioner also said that he was "out of marihuana and he and his brother were

---

by a person not otherwise disposed to commit it.   Inducement or encouragement to commit an offense means active inducement or encouragement.   Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

N.Y. Penal Law § 40.05.

going to Syracuse to re-supply."  (SR: 311).  Again, had that information been heard by the jury, it would have been highly detrimental to his entrapment defense.

By comparison, the testimony provided by Detective Vine and DeLong at trial was more helpful to the defense theory.  DeLong admitted she was a paid informant working for the Geneva Police Department.  Detective Vine specifically asked DeLong if she knew Petitioner and could buy marijuana from him.  DeLong replied affirmatively to both questions and soon thereafter initiated contact with Petitioner on Facebook for the purpose of making a controlled drug buy under Detective Vine's supervision.  DeLong admitted to falsely telling Petitioner that she was buying the marijuana for her terminally ill mother, who used it for pain management.  This testimony enabled defense counsel to obtain a jury instruction on entrapment with regard to the counts charging criminal sale of marijuana. (TT: 504-05).

Even assuming that DeLong's affidavits and the Facebook messages were favorable, Petitioner cannot establish that they were suppressed.  As noted above, Petitioner was a party to the Facebook messages and had access to them.  Petitioner admitted that the affidavits were turned over by the prosecutor on the first day of trial.  (SR: 269-72).  Due process of law does not require that the prosecution disclose all exculpatory and impeachment material "*immediately* upon demand" by the defense.  *Coppa*, 267 F.3d at 140 (emphasis in original).  All that matters is that Petitioner had sufficient opportunity to make "effective use" of the information "at trial."  *Id.* at 135

There is no suggestion in the record that the disclosure of the affidavits on the day of trial impaired his ability to present an entrapment defense.  Defense counsel cross-

examined DeLong and Vine extensively and argued the entrapment defense during summation. (*See* TT: 466 ("She made sure that he knew about her mom's cancer.  She put him in that position and didn't let up until she got the marijuana and was able to get back to Geneva PD and get her $100."); TT: 467 ("The police even admitted they knew about the Face[b]ook information, that there was the cancer situation on the Face[b]ook.  That all in itself put Mr. Navarro in a spot that he should not have been in."); TT: 473 ("Mr. Navarro may have given marijuana to Ms. DeLong.  He was put in a position by her to do it.  Any reasonable person would have done it.  He was cornered by her.  He was sought by her, and he did it to help her.")).  Petitioner therefore has not established the elements of a *Brady* violation at trial with regard to DeLong's affidavits or the Facebook messages between himself and DeLong.

"On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).  Petitioner has not demonstrated that a *Brady* violation occurred in connection with the suppression hearing or at trial.  Therefore, he is not entitled to habeas relief on Ground Three.

### D. Failure to Introduce the Certificate of Relief Civil Disabilities to the Grand Jury (Ground Four)

#### 1. Background

Petitioner alleges that the prosecutor secured his indictment for second-degree criminal possession of a weapon under "false pretenses" because he failed to inform the grand jury that Petitioner had a certificate of relief from civil disabilities which excused his

prior violent felony conviction and allowed him to possess firearms in his home or at his business.  (*See* Dkt. 1 at 11 (Ground Four)).  This appears to be a variation on the argument raised by defense counsel in support of the motion for a trial order of dismissal—that the certificate of relief from civil disabilities entitled Petitioner to the home or business exception to second-degree criminal possession of a weapon under P.L. § 265.03(3).

Petitioner states that he did not raise the grand jury claim on direct appeal because appellate counsel ignored his request to include it in the appellate brief.  (Dkt. 1 at 12; *see also* SR: 529 (requesting that appellate counsel argue that the certificate of relief from disabilities was still valid and allowed him to lawfully possess firearms)).  Appellate counsel did not "ignore" the request but rather explained that the argument could not be made because the certificate of relief from civil disabilities was never marked or received into evidence and therefore was not part of the record.  (SR: 530).  Appellate counsel stated that Petitioner was limited to arguing that defense counsel was ineffective in failing to enter the certificate of relief from civil disabilities into evidence (SR: 531), and he included that claim in the brief (SR: 66-68).  The Appellate Division rejected the ineffectiveness claim as follows:

> It is well settled that '[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success' . . . and defendant has failed to establish that a certificate of relief from disabilities would have raised a valid defense. The exemption found in Penal Law § 265.20(a)(5) applies only to those who have been issued a certificate of good conduct pursuant to Correction Law § 703-b, not to those who have been issued a certificate of relief from disabilities under Correction Law §§ 701, 702 or 703.

*Navarro*, 158 A.D.3d at 1245 (alteration in original; citations and some internal quotation marks omitted); *see also People v Kemp*, 273 A.D.2d 806, 806 (4th Dep't 2000) (rejecting the defendant's contention that "the exemption set forth in [New York] Penal Law § 265.02(a)(5) applies to him" because "defendant has never been issued a certificate of good conduct pursuant to [New York] Correction Law § 703-b").

As the Appellate Division correctly noted, there was "no evidence that [Petitioner] was ever issued a certificate of good conduct." *Id.* During argument on the motion for a trial order of dismissal, the trial court asked whether there was a certificate of good conduct in addition to a certificate of relief from civil disabilities. Defense counsel responded that:

> [u]pon information and belief there is not a certificate of good conduct that exists. I pulled the statute on that. I think it is 701 [sic] in the Corrections Law. I reviewed that with Mr. Navarro on what it would take to get that. He never applied for that. He does not have that. . . .

(TT: 442).

Respondent contends that the allegations regarding the certificate of relief from civil disabilities do not provide a basis for relief because challenges to the sufficiency of the grand jury evidence are not cognizable in a § 2254 proceeding (*see* Dkt. 14 at 20-21); the home or business exception required a certificate of good conduct, not just a certificate of relief from civil disabilities (*id.* at 22-23); and any violations of state law are not cognizable in a § 2254 proceeding (*id.* at 21). The Court agrees.

### 2.  Merits

The Supreme Court has held that on direct appeal, any errors in the grand jury—which only requires probable cause to indict—are rendered harmless where a petit jury has

convicted the defendant based on proof beyond a reasonable doubt. *United States v. Mechanik*, 475 U.S. 66, 70 (1986). Based on the reasoning of *Mechanik*, the Second Circuit has held that claims alleging defects in the grand jury proceeding "are *a fortiori* foreclosed in a collateral attack brought in federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that a habeas petitioner's "claims of impropriety before the grand jury . . . concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" were "cured in the trial before the petit jury, which convicted"). Petitioner's claim concerning the prosecutor's manner of presenting his case to the grand jury is not cognizable and cannot provide a basis for habeas relief.

In any event, the argument is meritless because the introduction of the certificate of relief from disabilities would not have entitled Petitioner to P.L. § 265.03(3)'s home or business exception. Under P.L. § 265.03(3), a person is guilty of second-degree criminal possession of a weapon when:

> (3) such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one . . . of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business.

N.Y. Penal Law § 265.03(3). Beginning with the words "except as provided," P.L. § 265.03(3) carves out an exception to the home or business exception which applies to defendants who have previous criminal convictions. *See People v. Jones*, 22 N.Y.3d 53, 57 (2013). P.L. § 265.03(3) refers to P.L. § 265.02(1), which defines third-degree criminal possession of a weapon. *Jones*, 22 N.Y.3d at 57. Under P.L. § 265.02(1), a person is guilty

of third-degree criminal possession of a weapon when he or she "commits the crime of criminal possession of a weapon in the fourth degree . . . *and has been previously convicted of any crime.*" N.Y. Penal Law § 265.02(1) (emphasis supplied).

In *Jones*, the New York Court of Appeals "read the reference in [P.L.] section 265.03(3) to [P.L.] section 265.02(1) as creating an exception to the home or business exception—i.e., to make that exception inapplicable when the defendant has a previous criminal conviction." *Jones*, 22 N.Y.3d at 57. The *Jones* court explained that:

> [t]he home or business exception is qualified by the words "except as provided in subdivision one . . . of section 265.02" and section 265.02(1) applies to a person who "has been previously convicted of any crime." Thus such a person may not rely on the home or business exception in a prosecution under Penal Law § 265.03(3).

22 N.Y.3d at 57 (ellipsis in original). In other words, "where the defendant has a previous conviction, the [home or business] exception never comes into play. . . ." *Id.* at 60; *see also id.* at 56 (rejecting defendant's contention that under P.L. § 265.03 (3) he was "entitled, despite his prior conviction, to rely on the so-called 'home or business' exception in the definition of second degree weapon possession" and holding that his "indictment for second degree possession was proper").

It is undisputed that Petitioner had previous criminal convictions. The prosecution attached to the indictment a special information alleging that Petitioner had been convicted of second-degree assault (P.L. § 120.05(7)) and sentenced to a two-year determinate term of imprisonment plus three years' post-release supervision on September 4, 2007. (SR: 105). Petitioner's additional convictions were discussed at the *Sandoval* hearing. (TT: 6-9, 18-30). The trial court determined that if Petitioner chose to testify, he could be cross-

examined about, *inter alia*, his arrest and subsequent plea on August 8, 2011, to attempted tampering with physical evidence and resisting arrest (TT: 20-21); his December 10, 2007 conviction for second-degree criminal trespass (TT: 21-23); and his September 11, 2006 conviction for resisting arrest (TT: 24-25).  Thus, the home or business exception "never [came] into play," *Jones*, 22 N.Y.3d at 60; *see also People v. Hughes*, 22 N.Y.3d 44, 48 (2013) (holding that "the prior misdemeanor [conviction for resisting arrest] barred defendant from defeating the second degree weapon possession charge on the ground that the possession took place in his home"); *People v. Barber*, 117 A.D.3d 1430, 1431 (4th Dep't 2014) ("Where, as here, 'the defendant has a previous conviction, the [home exception] never comes into play, [and] its inapplicability is not an element of the offense.'" (alterations in original) (quoting *Jones*, 22 N.Y.3d at 60)).

Furthermore, a certificate of relief from civil disabilities "clearly does not eradicate the underlying conviction."  *Able Cycle Engines, Inc. v. Allstate Co.*, 84 A.D.2d 140, 145 (2d Dep't 1981); *see also Nass v. Loc. 348, Warehouse Prod., Sales & Servs. Emp. Union*, 503 F. Supp. 217, 219 (E.D.N.Y. 1980) ("It has been repeatedly held, both in this Circuit and by the New York State courts, that the granting of a certificate of relief from civil disabilities in no way eradicates or expunges the underlying conviction." (citing *Rehman v. INS*, 544 F.2d 71, 74 n.5 (2d Cir. 1976), *superseded by statute on other grounds as stated in Wellington v. Holder*, 623 F.3d 115, 118 (2d Cir. 2010); *United States v. DiNapoli*, 557 F.2d 962, 966 (2d Cir. 1977); *DaGrossa v. Goodman*, 72 Misc. 2d 806, 339 N.Y.S.2d 502, 505 (N.Y. Sup. Ct. 1972)), *aff'd*, 657 F.2d 264 (2d Cir. 1981); *see also People v. Suero*, 60 Misc. 3d 1222(A), 107 N.Y.S.3d 617 (N.Y. Sup. Ct. 2018) (holding that certificate of relief

from civil disabilities issued by parole board for unrelated felony conviction did not bar imposition of risk points under sex offender registration statute because the prior "conviction is still dealt with as a conviction").

Petitioner is correct that a copy of his certificate of relief from civil disabilities was never made part of the record, but its absence did not make a difference to the outcome of his trial or appeal. There is no dispute that he has multiple previous convictions for both felonies and misdemeanors. Those convictions placed him outside the home or business exception in P.L. § 265.03(3), regardless of the scope, extent, and validity of the certificate of relief from disabilities. Petitioner's indictment and conviction on two counts of P.L. § 265.03(3) did not violate New York state law, let alone any provision of the federal constitution. The allegations in Ground Four regarding the certificate of relief from disabilities do not warrant habeas relief.

### E.  Constitutional Challenges to the P.L. § 265.03(3) Convictions (Ground Four)

With regard to the constitutional challenges asserted in Ground Four, Respondent contends that the Second Amendment claim is unexhausted but must be deemed exhausted and subject to an unexcused procedural default (Dkt. 14 at 21-22); the Second Amendment claim is meritless (*id.* at 23-24); and the allegations in support of the equal protection claim are impermissibly vague and fail to comply with Rule 2(c)(2) of the Rules Governing § 2254 Cases in the District Courts (*id.* at 23). The Court notes that Petitioner has mentioned a due process violation in Ground Four, but Respondent has not addressed it.

In his reply (Dkt. 16), Petitioner did not respond to Respondent's arguments concerning exhaustion and procedural default.

As discussed below, the Court agrees that the Second Amendment claim is unexhausted but must be deemed exhausted and procedurally defaulted. Because the Fourteenth Amendment claims are patently meritless, the Court exercises its discretion to bypass the exhaustion issue as to those claims. *See*, *e.g.*, *Boddie*, 285 F. Supp. 2d at 428 (concluding that "thorny issue" of exhaustion in the context of habeas challenge to parole decision "need not be addressed" because underlying claims were clearly without merit).

### 1. Second Amendment

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(3), (c)). In general, the exhaustion requirement is satisfied "when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).

Here, Petitioner did not raise a Second Amendment challenge to P.L. § 265.03(3) on direct appeal or in any of his collateral motions, and he now faces "an absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), by which to exhaust the claim. Petitioner has already used the one direct appeal to which he is entitled. *See*

*Gabbidon v. Lee*, No. 18CIV2248VBJCM, 2022 WL 1557272, at \*5 (S.D.N.Y. Mar. 10, 2022) ("Under New York law, defendants are permitted only one direct appeal." (citing *Dasney v. People of the State of New York*, No. 15 Civ. 5734 (RJS), 2017 WL 253488, at \*5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20(2)(a))), *adopted*, No. 18 CV 2248 (VB), 2022 WL 1558156 (S.D.N.Y. May 16, 2022).

If Petitioner returned to state court and filed another 440 motion, he faces a mandatory dismissal of the Second Amendment challenge because it is not based on any facts outside the trial record.  *See*, *e.g.*, *People v. Keebler*, 15 A.D.3d 724, 727 (3d Dep't 2005) (holding that because the defendant's claim challenging the constitutionality of the statute to which he pleaded guilty "does not involve factual matters beyond the scope of the record or legal issues which could not have been asserted before the final judgment of conviction, it was not the proper subject of a CPL 440.10 motion" (quoting *People v. Mower*, 97 N.Y.2d 239, 245-46 (2002)); *see generally* N.Y. Crim. Proc. Law § 440.10(2)(c) (stating, in relevant part, that "the court must deny a motion to vacate when . . . sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion," but "no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him or her unless the issue raised upon such motion is ineffective assistance of counsel").

Although C.P.L. § 440.10(2)(c) now excepts record-based ineffective assistance claims from mandatory dismissal,[10] Petitioner cannot exhaust his Second Amendment claim by asserting it in a 440 motion as a predicate for a claim of ineffective assistance of trial counsel.  More precisely, Petitioner cannot satisfy the "fair presentation" aspect of the exhaustion doctrine.  *See Galdamez*, 394 F.3d at 73 ("[T]he federal court must assess whether the petitioner '*properly* exhausted those [state] remedies, i.e., whether [petitioner] has *fairly presented* his [or her] claims to the state courts,' *O'Sullivan*, 526 U.S. at 848, such that the state court had a fair opportunity to act." (alterations and emphases in original)).

"A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'"  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye*, 696 F.2d 191).  "The claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition."  *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Strogov v. Att'y Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999)); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam) (emphasis supplied) (stating that a petitioner "cannot show exhaustion unless he has 'fairly presented to an appropriate state court the *same* federal constitutional claim that he now urges upon the federal courts'" (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

---

[10]     *See People v. Green*, 201 A.D.3d 814, 816 (2d Dep't 2022) ("[E]ffective October 25, 2021, CPL 440.10(2)(c) does not apply to the issue of ineffective assistance of counsel."); *see also Herring v. McCarthy*, No. 19-CV-6111 (CJS), 2022 WL 7326255, at *2 & n. 1 (W.D.N.Y. Oct. 13, 2022) (noting amendment).

Petitioner's Second Amendment claim and a potential Sixth Amendment ineffective assistance of counsel claim based on the failure to assert a Second Amendment claim may share a factual predicate. Nevertheless, they are founded on two different constitutional amendments and are legally distinct. And "[a] court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims." *Turner*, 262 F.3d at 123. Thus, raising a constitutional claim as a predicate for a claim of ineffective assistance of counsel exhausts only the ineffectiveness claim, not the underlying constitutional claim. *See Turner*, 262 F.3d at 123-24 (finding that petitioner did not exhaust standalone claims of prosecutorial misconduct by raising them in a *coram nobis* motion as predicates for the claim of ineffectiveness of appellate counsel, on the theory that effective counsel would have appealed on those grounds, because the claims were "distinct . . . in procedural terms under state law and in their federal constitutional sources"). Petitioner cannot fulfill the exhaustion requirement as to the Second Amendment claim by asserting it as a predicate for an ineffective assistance claim in a 440 motion.

The Second Amendment claim in Ground Four must be deemed exhausted because Petitioner no longer has remedies available in the New York state courts. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); 28 U.S.C. § 2254(c). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," *Gray v. Netherland*, 518 U.S. 152, 162 (1996), and renders the claim procedurally defaulted, *id.* Habeas review of the claim is unavailable unless

Petitioner "show[s] cause for the default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)).

Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim; however, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (stating that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim") (emphasis in original).

Petitioner does not have a meritorious, exhausted claim of ineffective assistance of appellate counsel based on the failure to raise the Second Amendment challenge on direct appeal. The Second Amendment claim is clearly unpreserved for appellate review because it was not raised before Petitioner was sentenced. *Keebler*, 15 A.D.3d at 727 (citing *Mower*, 97 N.Y.2d at 245 (holding that because "defendant did not raise th[e] alleged constitutional infirmity before he pleaded guilty or was sentenced[,] . . . it is therefore unpreserved")); *see also People v. Cabrera*, ___ N.E.3d ___, No. 65, 2023 WL 8039656, at *1 (N.Y. Nov. 21, 2023) (because the defendant's "Second Amendment arguments were not preserved as required by New York law," court did "not reach the merits of the[ ] constitutional challenges" to P.L. § 265.03(3), notwithstanding the intervening United States Supreme Court decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, ___ U.S. ___, 142 S. Ct. 2111 (2022)); *People v. Wright*, 213 A.D.3d 1196, 1196 (4th Dep't

2023) (same); *see also People v. McWilliams*, 214 A.D.3d 1328, 1329 (4th Dep't 2023) ("Defendant's attempts to invoke exceptions to the preservation rule are unavailing inasmuch as the United States Supreme Court's intervening decision in *Bruen* neither held any criminal statute unconstitutional nor called into doubt New York's criminal prohibitions on unlicensed possession of firearms.").

Petitioner also was required to fulfill another preservation requirement—providing notice to the New York Attorney General pursuant to New York Civil Practice Law & Rules ("C.P.L.R.") § 1012(b)(1) and (3) that he was raising a constitutional challenge to P.L. § 265.03(3). *See*, *e.g.*, *People v. Whitehead*, 46 A.D.3d 715, 716 (3d Dep't 2007) (defendant's contention that a section of the criminal procedure law was unconstitutional was unpreserved for appellate review due to his failure to register a timely objection in the trial court and, in any event, was not properly before the appellate court due to the defendant's failure to provide notice under C.P.L.R. § 1012(b)(1), (3)); *People v. Reinard*, 134 A.D.3d 1407, 1409 (4th Dep't 2015) (same). Petitioner did not do so.

Given that a Second Amendment challenge to P.L. § 265.03(3) was unpreserved on at least two grounds, appellate counsel did not act unreasonably in declining to raise such a claim on appeal. *See*, *e.g.*, *Mills v. Girdich*, 614 F. Supp. 2d 365, 394 (W.D.N.Y. 2009) (where there was a "clear lack of preservation" as to the claim challenging the sufficiency of the evidence as a matter of due process, "it cannot be said that appellate counsel was unreasonable in declining to include a 'legal insufficiency' claim in her appellate brief" (collecting cases)).

Petitioner's failure to demonstrate "cause" obviates the need to show "prejudice." *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (finding it unnecessary to reach the question of whether the petitioner showed prejudice resulting from the procedural default where he had not established cause for defaulting on the claim).  As an aside, the Court notes that given the consistency and regularity with which New York state courts decline to entertain unpreserved constitutional challenges to state statutes, Petitioner in all likelihood could not show a reasonable probability of a different outcome of his appeal had appellate counsel raised the unpreserved Second Amendment argument.

Finally, Petitioner has not attempted to show that he is actually, factually innocent of the charges against him such that a fundamental miscarriage of justice would occur if this Court refused to hear the Second Amendment claim.  The Court finds that the record is devoid of any facts supporting a plausible gateway claim of actual innocence through which a procedurally defaulted Second Amendment claim might pass.  Accordingly, the Court finds that the Second Amendment claim is subject to an unexcused procedural default and dismisses it on that basis.

## 2.  Fourteenth Amendment Equal Protection

The Fourteenth Amendment's "equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "[A] defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.'"  *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)).  "A corollary to this principle is that a criminal

defendant must prove that the purposeful discrimination 'had a discriminatory effect' on *him*." *Id.* (emphasis supplied) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

In his reply, Petitioner argues that two Caucasian defendants prosecuted by the Ontario County District Attorney's Office—Flook and Martin—were similarly situated to him yet were treated more favorably than he because of their race.  (Dkt. 16 at 2).

In *Flook*, the defendant was represented by Ontario County Court Judge Reed, who was a practicing attorney at the time and who later, after becoming a judge, presided over Petitioner's trial.  Flook sought and obtained dismissal of the count charging him with fourth-degree criminal possession of a weapon in violation of P.L. § 265.01(4), based on his argument that the presiding judge, Ontario County Court Judge Frederic Henry, Jr., previously issued a certificate of relief from disabilities which would allow him to possess firearms.  *Flook*, 164 Misc. 2d at 284-85.  Under P.L. § 265.01(4), a person is guilty of fourth-degree criminal possession of a weapon "when he possesses a rifle or shotgun and has been convicted of a felony or serious offense[,]" 164 Misc. 2d at 285; however, "[P.L.] section 265.20(a)(5) excepts a person to whom a certificate of good conduct has been issued pursuant to section 703-b of the Correction Law." *Id.*  The defendant in *Flook* had a certificate of relief from disabilities but not a certificate of good conduct.  *Id.* at 286-87.  According to Judge Henry's analysis, there was no more than an "insignificant distinction between the two certificates," which was an "unfair" basis for imposing prosecution and a potential maximum one year jail sentence.  *Id.* at 286.  Accordingly, the court dismissed the P.L. § 265.01(4) count as a matter of discretion.  *Id.*

As an initial matter, "the Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions." *Milwaukee Electric Ry. & Light Co. v. Wisconsin ex rel. Milwaukee*, 252 U.S. 100, 106 (1920). "Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 554-55 (1962). Furthermore, Petitioner and Flook were not similarly situated. Petitioner was not charged with violating P.L. § 265.01(4), and there is no indication that Flook had multiple felony convictions as Petitioner does. Finally, no other courts have relied on *Flook* for the proposition cited by Petitioner. *See Matter of Alarie*, 168 Misc. 2d 329, 330 (N.Y. County Ct. 1996) ("declin[ing] to follow the *dicta*" in *Flook* "opining that a certificate of relief from civil disabilities issued by a County Court may remove the statutory bar to apply for or receive a New York State pistol license").

Turning to the *Martin* case, Petitioner has highlighted a few paragraphs of colloquy preceding the defendant's entry of an *Alford* plea to third-degree grand larceny. (Dkt. 16 at 84-85). The defendant's attorney brought up the fact that her husband was a security officer at the Ginna nuclear power plant and was required to have a firearm in the home. (*Id.* at 84). The prosecutor—who was the same individual who prosecuted Petitioner's case—stated that if the defendant was successful on probation, his office would not take a position on her application for a certificate of relief from civil disabilities. (*Id.* at 84-85). The prosecutor also noted that his office "typically" does not take a position on such applications and there was "nothing really that would need to be negotiated." (*Id.* at 85). Petitioner and Martin were even less similarly situated than Petitioner and Flook.

Moreover, the prosecutor's comment about the certificate of relief had no effect on the outcome of the defendant's case.

Petitioner has not carried his burden of "prov[ing] that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 292 (emphasis in original). Absent a finding of such purpose, his equal protection claim must be denied. *See id.* at 298-99 (denying habeas petitioner's equal protection challenge to Georgia's capital punishment statute because there was no evidence that the Georgia legislature either enacted the statute to further a discriminatory purpose or maintained the statute because of its disproportionate impact).

### 3. Fourteenth Amendment Due Process

Petitioner has not elaborated on the basis for the alleged due process violation in Ground Four. "Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires a petitioner to '(1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]'" *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 354-55 (N.D.N.Y. 2013) (alterations in original) (quoting Rule 2(c), 28 U.S.C.A. foll. § 2254; citing 28 U.S.C. § 2242 (an application for a writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention")).

"It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *Id.* (citing *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.") (citing *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d

Cir. 1987)).  The petition is completely devoid of factual support for the alleged due process violation in Ground Four.  Accordingly, the claim is dismissed.  *See Skeete*, 2003 WL 22709079, at *2 (dismissing habeas petitioner's claim that was "no more than a vague allegation that 'numerous' violations and errors occurred at his trial" as to which the petitioner "offer[ed] no facts, nor any reference to the record").

## VI.  <u>CONCLUSION</u>

For the reasons discussed above, the petition (Dkt. 1) is denied.  The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(1), (2).  The Clerk of Court is directed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        December 4, 2023
              Rochester, New York